UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DONALD MACK DOVE,

                               Plaintiff,

      v.                                                            No. 09-CV-259
                                                                   (NAM/DRH)

DAVID HARDER, Sheriff, Broome County; and
MICHELE PARSONS, Nurse Administrator,
Broome County Jail,

                               Defendants.

---

**APPEARANCES:**                                **OF COUNSEL:**

DONALD MACK DOVE
Plaintiff Pro Se
10-B-0378
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011

SMITH, SOVIK, KENDRICK & SUGNET, P.C.    DANIEL R. RYAN, ESQ.
Attorney for Defendants
Suite 600
250 South Clinton Street
Syracuse, New York 13202-1252

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Donald Mack Dove ("Dove"), an inmate presently in the custody of the New York State Department of Correctional Services ("DOCS") and formerly an inmate at the Broome County Jail ("Jail"), brings this action pursuant to 42 U.S.C. § 1983 alleging that David Harder, the Broome County Sheriff, and Michele Parsons, the Jail Nurse

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Administrator, violated his constitutional rights under the First and Eighth Amendments. Compl. (Dkt. No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 27. Dove opposes the motion and cross-moves for summary judgment. Dkt. No. 30. For the following reasons, it is recommended that defendants' motion be granted and Dove's cross motion be denied.

## I. Background

Dove's complaint focuses on his treatment for Hepatitis C and his access to the Jail's law library.

### A. Hepatitis C Treatment

Dove arrived at the Jail on October 22, 2008, "at which time he stated a history of hepatitis C without current treatment[2] . . . [and an] occasional [history of] alcohol and marijuana use." Dkt. No. 1-2 at 3, Dkt. No. 27-6 at 4; see also Compl. ¶ 6; Dove Dep. (Dkt. No. 27-5) at 14; Dkt. No. 27-7 at 2 (health admissions form indicating Dove's subjective reports of drug and alcohol use prior to incarceration); Parsons Aff. (Dkt. No. 28) ¶ 2. Despite signing the medical entrance forms, Dove later testified that he did not believe he had used any drugs or alcohol prior to his detention. Dove Dep. at 36-39, 84.[3] Parsons

---

[2] In subsequent deposition testimony, Dove stated that during a previous incarceration medical staff had "tried to treat him [for hepatitis] in 2003." Dove Dep. at 94. Medical records indicated that this treatment was ineffective as Dove's condition was resistant to the treatment. Parsons Aff. (Dkt. No. 28) ¶ 10. Medical tests also indicated that "his lab results were . . . within normal limits," so treatment was not indicated. Id.

[3] Dove maintained to the position that he had not been abusing drugs or alcohol immediately prior to or during his incarceration, but Dove received alcohol and drug

referred Dove to a physician in accordance with facility policy and his self-reported history of hepatitis. Id. at 20-21, 26-27. Dove claims to have seen a physician, Dr. Butt, on September 26, October 8, and November 19, 2008, but he was never actually treated for his Hepatitis C. Compl. ¶ 6; Dove Dep. at 14-17. Dove never discussed his treatment or health requests with Parsons again. Dove Dep. at 28. Parsons was not responsible for providing medical care to Dove, because as a chronic care patient, his care was to be provided by physicians. Parsons Aff. ¶ 6. Moreover, it was the physician's responsibility to "order[] and administer[] any Hepatitis treatment. [Parsons, a]s a Registered Nurse, [was] not qualified to write orders [or] . . . treat a patient with a diagnosis of Hepatitis C." Id. ¶ 9.

On August 6, 2008, Dove filed a grievance alleging that he had been denied treatment for his Hepatitis C on August 5, 2008. Dkt. No. 1-2 at 2, Dkt. No. 27-6 at 2; see also Dove Dep. at 32-34. On August 12, 2008, Parsons responded to Dove's grievance explaining that there was a "minimum requirement to initiate treatment . . . that the individual must be free of drugs and alcohol for at least one year and that the individual must remain in the facility for a minimum of [nineteen] months beyond the year of substance use." Dkt. No. 1-2 at 3, Dkt. No. 27-6 at 3; see also Parsons Aff. ¶ 3 (detailing the "guidelines and policies issued by Broome County," which state that "treatment . . . will not occur in situations in which the inmate has indicated a past history of alcohol and drug use. The minimum requirement to initiate treatment is that an individual must be [sober] . . . for at [least] one year . . . ."). Dove's grievance was denied. Dkt. No. 1-2 at 4. Dove appealed the denial, which was ultimately affirmed by The Citizens' Policy and Complaint Review Council on

---

counseling prior to his detention and has received misbehavior reports while in the Jail for possession of alcohol. Dove Dep. at 84-88.

November 6, 2008. Dkt. No. 1-2 at 5, Dkt. no. 27-6 at 5.[4]

### B. Access to Law Library

Dove also contends that he was denied access to the law library from February until August 25, 2008. Compl. ¶ 7; Dove Dep. at 41. Dove testified that, unless he was housed in a segregated unit, during that time frame he was allowed two hours of library access per week, in accordance with facility policy but that this was an insufficient amount of time to mount his criminal defense. Dove Dep. at 42-43, 46-48; see also Brown Aff. (Dkt. No. 27-15) ¶ 8 ("Inmates housed in general population . . . are granted access to the law library twice a week for one hour a day."). In response to Dove's concern over his amount of available library time, Dove received a court order, dated April 23, 2008, allowing him daily access to the library in order to adequately represent himself in his pending criminal matter. Dove Dep. at 44; Dkt. No. 27-9 at 2 (court order); Dkt. No. 27-11 at 2 (letter to judge requesting daily law library access).

During Dove's testimony, he indicated that after April 23, 2008, his access to the law library was restricted. Dove Dep. at 67-68. Dove contends that his inability to access the law library daily, from April 23 to August 25, 2008 prejudiced his criminal trial because he did not have "access to the typewriter, [or ability to] look[] up these cases . . .." Dove Dep. at 56. Thus, for the seven months prior to trial, Dove was able to access the law library as often as needed. Id. at 67. Dove attended a two-day trial on February 9 and 10, 2008, and

---

[4] Dove testified that he was never informed why he had been denied treatment for his hepatitis, but a letter from Dove to Parsons on August 13, 2008 indicates that he received her memorandum outlining the reasons. Dove Dep. at 29-30; Dkt. No. 27-6 at 6.

4

he was ultimately convicted of burglary and assault. Dove Id. at 56-57.

On September 3, 2008, Dove filed a grievance stating that he had been denied daily access to the law library in contravention of the court order. Dkt. No. 1-2 at 8, Dkt. No. 27-13 at 2. During Dove's testimony, he indicated that although his moving papers and earlier testimony established that he had adequate access to the law library after August 25, 2008 and that the access must have stopped again prior to September. Dove Dep. at 68-69. On September 8, 2008, the grievance coordinator responded stating that, pursuant to the judge's April 23rd order, facility "records indicate that [Dove had] not been denied access to the law library and on several occasions . . . ha[d] signed into the library[; specifically on] April 29, 2008; May 6, 8, [and] 14 2008; June 17 [and] 26 2008; August 6, 11, 13 [and] 18 2008." Dkt. No. 1-2 at 9, Dkt. No. 27-13 at 3; see also Dkt. No. 27-10 at 2-11 (law library sign-in sheets); Dkt. No. 27-12 at 2. Dove testified that he was not actually in attendance those dates, and that instead the grievance coordinator "put some dates up there to make it look like I was going . . . ." Dove Dep. at 48.

However, Dove later confirmed that when not housed in administrative segregation, he was in the law library as often as facility protocol permitted including those dates listed above. Dove Dep. at 49-54, 58. Dove also testified that while in segregated housing, he was still permitted to have legal material brought to him in his cell. Dove Dep. at 54, 58; see also Brown Aff. ¶ 8 (explaining that inmates in certain housing units are not allowed access to the library for disciplinary reasons but may "request . . . materials in writing and those materials are then brought to the inmate."). The grievance coordinator also indicated that there were "no additional request[s] made by [Dove] since April 23, 2008," and that he had "dealt with many problems [Dove] ha[s] had. The law library ha[d] never been an issue

[before] . . . and if brought to [the grievance's coordinator's] attention could have been dealt with sooner." Dkt. No. 1-2 at 9; see also Brown Aff. ¶¶ 4, 7, 9-12.

Dove further testified that he never "specifically ask[ed] to go to the law library . . . and ha[d] someone say no[.]" Dove Dep. at 70. Based on this memorandum, the grievance and its appeal were both denied. Dkt. No. 1-2 at 7, 10, Dkt. No. 27-13 at 4, 6. Dove also testified that he never spoke to Harder about these law library issues, only that he wrote letters to Harder to which an unnamed third party responded on Harder's behalf. Dove Dep. at 70-74; see also Harder Aff. (Dkt. No. 27-14) ¶¶ 2-3 (explaining that Harder had not "met or spoken to [Dove] . . . nor . . . participated in the personal provision of his medical care, or been personally involved with any decisions regarding his access to the correctional facility's library," and stating that correspondence regarding the library access was "forwarded . . . to . . . jail administrators . . . .").

## II.  Discussion

Dove contends that his constitutional rights were violated when defendants interfered with his ability to access the law library and when they were deliberately indifferent in treating his Hepatitis C. At the time these events occurred, Dove was a pretrial detainee in Broome County Jail. Dove Dep. at 56 (stating that criminal trial, following initial incarceration of October 2007, occurred February 9 and 10, 2009). Defendants contend that Dove's constitutional claims have no merit, no personal involvement has been established for either defendant, defendants are entitled to qualified immunity, Harder was not properly served, Dove is not entitled to punitive damages, and Dove failed to establish a

6

municipal policy that caused his injuries.[5]

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

---

[5] As It is recommended herein that Dove's claims be dismissed on their merits. Accordingly, defendants' remaining contentions will not be further addressed herein.

7

477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants" and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law.

Id. (internal citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F. 3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally." (citations omitted)).

### B. Personal Involvement

Defendants seek dismissal of both defendants based on a lack of personal involvement. Personal involvement is an essential prerequisite for section 1983 liability. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). A section 1983 defendant, however, cannot be liable "merely because he held a high position of authority." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered " personally involved" if:

> 1) the defendant participated directly in the alleged constitutional violation;
>
> 2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

>   3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
>   4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
>   5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

### 1. Harder

Dove contends that because of Harder's authority, as sheriff, and the fact that Dove had given him notice of his claims by writing him letters, he is personally involved. Harder cannot be held liable simply because he is a supervisor. Black, 76 F.3d at 74. Dove does not contend that Harder directly participated in any of his alleged constitutional violations. However, Dove does contend that because he sent him a letter, Harder was personally involved. Such contentions are meritless. See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted) (finding personal involvement only where a supervisory official received, reviewed, and responded to a prisoner's complaint); Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.") (citations omitted).

9

Similarly, receipt of a letter, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement. See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing cases); Boddie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004). Moreover, delegating the responsibility to other officers, as Harder indicated he did, to handle the situations identified in the correspondence is completely reasonable and also insufficient to establish personal involvement. See Reid v. Artus, 984 F. Supp. 191, 195 (S.D.N.Y. 1997) (finding no basis for supervisory liability when defendant assigned another officer to investigate a complaint and then informed inmate that investigation had commenced). Furthermore, the complaint fails to allege facts sufficient to presume that Harder failed to train any of the defendants or that he was grossly negligent.

Because Dove failed to show that Harder had any personal involvement in the matters alleged in the complaint, the motion should be granted on this ground as to Harder.

### 2. Parsons

Dove's claim against Parsons is that she failed to initiate Hepatitis treatment. Dove Dep. at 34. As Parsons stated, she was unable to start such treatment as she was only a registered nurse, and her responsibility was to refer Dove to a physician. Parsons Aff. ¶¶ 6, 9. Dove has failed to proffer any evidence to dispute such a claim. As such, even construing the facts in the light most favorable to Dove, he has failed to raise a question of material fact concerning Parsons' direct involvement in any part of

his care. See Melendez v. Wright, No. 05-CV-1614, 2008 WL 4757360, at *6 (N.D.N.Y. Oct. 29, 2008) ("[T]he Court notes that not a single allegation of wrongdoing has been lodged against this Defendant, nor can we find any indication in the medical records that Defendant . . . treated Plaintiff."); Rose v. Alvees, No. 01-CV-0648SR, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004) (concluding that there was a lack of personal involvement because the Nurse "establish[ed] that she was not authorized to prescribe medication to any inmate and that she was not involved in any medical services or treatments relating to plaintiff's Hepatitis C," without opposition from the plaintiff). Additionally, there are no indications, and the record does not support any inferences, that Parsons was grossly negligent in supervising or training any personnel, responsible for policy formulation regarding inmates' Hepatitis C treatment, or failed to act to right an ongoing constitutional wrong.

Because Dove failed to show that Parsons had any personal involvement in the matters alleged in the complaint, defendants' motion should be granted on this ground as to Parsons.

### C. Access to Courts

"Prisoners, including pretrial detainees, have a constitutional right of access to the courts . . . ." Bourden v. Loughren, 386 F.3d 88, 92 (2d Cir. 2004) (internal quotation marks omitted) (citing Bounds v. Smith, 430 U.S. 817, 821-22 (1977) (citations omitted) (holding that all prisoners have a well-established Constitutional right to "adequate, effective, and meaningful" access to courts). This "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers . . .

11

." Bounds, 430 U.S. at 828. In order to state a claim for denial of access to the courts, a plaintiff must allege "that a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citing Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)). The injury must have been the result of the deliberate and malicious behavior of a defendant. Tajeddini v. Gluch, 942 F. Supp. 772, 780 (D. Conn. 1996).

In this case, Dove has failed to establish either that he was denied access to the law library or that such a denial prejudiced his criminal trial. First, the record illustrates that Dove had access to the library for ten months preceding his trial. Even when he was in segregated housing, Dove was able to request, and had delivered, materials from the library. Dove Dep. at 42-43, 46-54. Moreover, Dove was no stranger to the grievance coordinator. Dove's claims of denial of access are belied by the fact that he never grieved the situation and admitted that he used the library as much as possible when he was in general population housing. Id. at 42-43, 46-54; Brown Aff. ¶¶ 4, 7, 9-12. Furthermore, Dove was never denied a trip to the law library when he requested one. Dove Dep. at 70. Accordingly, no one at the Jail denied him access to the law library.

Second, even if it could be said that there was a denial of access, Dove has failed to proffer any arguments that show he was prejudiced by the denial. Dove admittedly filed four motions in state court and represented himself during his criminal trial. Dove Dep. at 76. Dove's asserts only in conclusory terms that the denial precluded him from typing his papers and generally finding and shepardizing cases. Id. at 56. Such

assertions amount to little more than contentions that additional time in the library would have resulted in more sophisticated and creative legal arguments. The fact that Dove was convicted under such circumstances, without any other allegations that he was unable to assert a specific claim or respond to one of the State's arguments, is insufficient to establish prejudice. See Lewis, 518 U.S. at 351 (giving examples of actual injury including inability to assert or continue a claim); Arce v. Walker, 58 F. Supp. 2d 39, 43 (W.D.N.Y. 1999) ("[A] claim that prison practices kept a prisoner from raising an argument or asserting a claim in his pleadings, in response to a dispositive motion, or at trial would likely suffice to show harm," but claims that the prison practice prevented the inmate from "ma[king] a more compelling or sophisticated argument would not.").

Accordingly, in the alternative, defendants' motion should be granted on this ground.

### D. Medical Treatment[6]

As previously stated, Dove was a pretrial detainee when he contends he did not receive appropriate medical treatment. The Eighth Amendment protections apply to those who have been convicted of a crime, sentenced, and are thus suffering the "punishment" contemplated by the Cruel and Unusual Punishment Clause. Benjamin v. Fraser, 343 F.3d 35, 49-50 (2d Cir. 2003) (citing cases). Claims concerning the

---

[6] Defendants indicate that one of the parties submitted Dove's medical records to the undersigned for review. Ryan Aff. (Dkt. No. 31) ¶ 6. No records were submitted, but sufficient evidence exists from the affidavits and other submissions.

13

conditions of confinement brought by a pretrial detainee, such as Dove, must be analyzed under the Fourteenth Amendment Due Process Clause. Id.

The standards under the Eighth and Fourteenth Amendments are not identical but are strikingly similar. For example, claims under the Eighth Amendment require proof of both serious injury to the plaintiff and deliberate indifference to a known danger by the prison official. See Farmer v. Brennan, 511 U.S. 825, 834-35 (1994). Claims under the Fourteenth Amendment require proof of actual or imminent harm to the plaintiff and deliberate indifference by the prison official. See Benjamin, 343 F.3d at 50-51 & n.17; see also Shane v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being . . . [including] food, clothing, shelter, medical care, and reasonable safety . . . ."). Accordingly, cases analyzed under the Eighth Amendment may provide guidance in analyzing cases, as here, considered under the Fourteenth Amendment.

The Fourteenth Amendment prohibition extends to the provision of medical care. Shane, 489 U.S. at 199-200. The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer, 511 U.S. at 834; Benjamin, 343 F.3d at 51 n.17. Second, the prisoner must show that the prison official demonstrated deliberate indifference by knowing of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."

Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)); see also Benjamin, 343 F.3d at 51 n.17. Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Defendants do not contest that Hepatitis constitutes a serious medical condition. However, defendants do contend that they were not deliberately indifferent to Dove's medical condition. Dove alleges that the medical personnel at the Jail were deliberately indifferent to his medical needs by failing to provide him with drug therapy for his hepatitis. However, Dove's complaints essentially boil down to a difference of opinion over treatment and such disagreements are insufficient to maintain a constitutional claim. Sonds, 151 F. Supp. 2d at 312. Current facility policies dictated that inmates must remain sober for a year prior to treatment and must also remain incarcerated for nineteen months in order for treatment to be initiated and effective.[7] Dkt. No. 1-2 at 3, Dkt. No. 27-6 at 3; Parsons Aff. ¶ 3. Dove's subjectively reported medical history indicated substance abuse problems. Dkt. No. 1-2 at 3, Dkt. No. 27-6 at 4; Dkt. No. 27-7 at 2; Parsons Aff. ¶ 2. While Dove disputes this, such contentions are belied by his enrollment in a substance abuse rehabilitation program and his subsequent disciplinary infraction for possession of contraband alcohol. Dove Dep. at 84-88. As controlling "substance use issues [are] an essential part of . . . Hepatitis

---

[7] Dove included a memorandum indicated new policy propositions that treatment should be given after six months sobriety and can be initiated even if an inmate is scheduled for release prior to nineteen months. Dkt. No. 30 at 11-12. This policy also included discretionary language that "[t]he details of [any substance] incident[s] and the urgency of treatment will be evaluated individually to determine whether or not the incident results in temporary disqualification." Id. Even under these guidelines, no deliberate indifference would be found. First, despite Dove's contradictory testimony, medical records indicate substance abuse problems upon his entrance into the facility. Dkt. No. 1-2 at 3, Dkt. No. 27-6 at 4; Dkt. No. 27-7 at 2; Parsons Aff. ¶ 2. Second, these issues appeared to continued with Dove's disciplinary infractions for possession of contraband alcohol. Dove Dep. at 84-88. Lastly, Dove's medical records indicated that treatment was not urgent or indicated because his base line levels were normal and previous treatment had been ineffective. Parsons Aff. ¶ 10. Accordingly, Dove has failed to raise a material issue of fact sufficient to meet the subjective prong of the analysis.

C/liver treatment and protection program[s]," treatment was not yet indicated for Dove. Dkt. No. 30 at 12.

Furthermore, separate and apart from the substance abuse policy instituted for best medical results, Dove's own medical records indicated that treatment was inappropriate. Dove's baseline levels were normal and his previous experience with receiving treatment was unremarkable as Dove's disease was resistant and the treatment was not beneficial. Parsons Aff. ¶ 10. Dove's disagreement with these medical assessments is again a difference of opinion as to treatment, which is not actionable. Sonds, 151 F. Supp. 2d at 312.

Accordingly, in the alternative, defendants' motion is granted on this ground.

### E. Qualified Immunity

Defendants claim that even if Dove's constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990)

(internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, it has not been shown that defendants violated Dove's constitutional rights. Accordingly, defendants' motion should also be granted on this ground.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

    1.  Defendants' motion for summary judgment (Dkt. No. 27) be **GRANTED** and that judgment be entered in favor of both defendants on all claims; and

    2.  Dove's cross-motion for summary judgment (Dkt. No. 30) be **DENIED** in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 19, 2010
   Albany, New York

             *David R. Homer*
             United States Magistrate Judge